UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JONATHAN LEWIS,

                              Plaintiff,

    v.

STATE OF NEVADA, et al.,

                            Defendants.

Case No. 3:23-cv-00469-ART-CSD

ORDER

Plaintiff Jonathan Lewis, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC") at Northern Nevada Correctional Center, has submitted a civil rights complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1-1.) The matter of the filing fee is temporarily deferred. The Court now screens Plaintiff's Complaint under 28 U.S.C. § 1915A.

I.    **SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* §§ 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, under the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an

1    incarcerated person's claim if "the allegation of poverty is untrue" or if the

2    action "is frivolous or malicious, fails to state a claim on which relief may be

3    granted, or seeks monetary relief against a defendant who is immune from such

4    relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a

5    claim upon which relief can be granted is provided for in Federal Rule of Civil

6    Procedure 12(b)(6), and the Court applies the same standard under § 1915

7    when reviewing the adequacy of a complaint or an amended complaint. When a

8    court dismisses a complaint under § 1915(e), the plaintiff should be given leave

9    to amend the complaint with directions as to curing its deficiencies, unless it is

10   clear from the face of the complaint that the deficiencies could not be cured by

11   amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

12       Review under Rule 12(b)(6) is essentially a ruling on a question of law.

13   *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal

14   for failure to state a claim is proper only if it is clear that the plaintiff cannot

15   prove any set of facts in support of the claim that would entitle him or her to

16   relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this

17   determination, the Court takes as true all allegations of material fact stated in

18   the complaint, and the Court construes them in the light most favorable to the

19   plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

20   Allegations of a *pro se* complainant are held to less stringent standards than

21   formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980).

22   While the standard under Rule 12(b)(6) does not require detailed factual

23   allegations, a plaintiff must provide more than mere labels and conclusions. *See*

24   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of

25   the elements of a cause of action is insufficient. *See id.*

26       Additionally, a reviewing court should "begin by identifying pleadings

27   [allegations] that, because they are no more than mere conclusions, are not

28   entitled to the assumption of truth." *Ashcraft v. Iqbal*, 556 U.S. 662, 679 (2009).

"While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by an incarcerated person may be dismissed sua sponte if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (*e.g.*, fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

II. **SCREENING OF COMPLAINT**

In his Complaint, Lewis names as Defendants the State of Nevada, Nevada Attorney General Aaron Ford, the NDOC Director of Prisons, the Northern Nevada Correctional Center ("NNCC") Warden, NNCC correctional officers Ralston, Haaus, Ashcraft, Collen, Lopez, Omler, White, Jacobs, and Garcia and medical staff Gaylene, Christy, Venessa, Marcia, and Mac for events that occurred at NNCC. (ECF No. 1-1 at 1, 3.) He brings four claims and seeks monetary damages and declarative and injunctive relief. (*Id.* at 16.)

Lewis alleges the following. On June 14, 2023, he was lying on the bed in his dormitory when Ralston and Haaus entered the room, approached Lewis, and told him to stand up. Lewis started to explain that he needed his wheelchair, but Ralston interrupted and told Lewis to put his hands behind his back. Lewis asked, "Why? I didn't do anything." (*Id.* at 4.) Ralston pulled his

taser, yelled at Lewis to put his hands behind his back, then, without giving Lewis a chance to comply, shot him with the taser. The taser had no effect, so Ralston shot him again, which was successful. Haaus sprayed Lewis with mace and tackled him, pushing him through the doorway.

Lewis was dragged into the hallway, which caused his pants and underwear to be pulled down. The officers placed him in handcuffs and leg irons. They instructed him to walk, but he couldn't because his pants were down, and he needed his wheelchair. Some officer said, "drag his ass," and he was pulled about 100 feet and then out the front door. (*Id.* at 4-5.) He was left face down on the concrete with his buttocks exposed. The handcuffs cut into his left wrist. At some point an unspecified officer had his knee on Lewis' neck. Lewis repeatedly complained that he could not breathe. Officer Lopez said, "Good, do us all a favor and die." (*Id.* at 5.) Officers made remarks such as, "Why is he so fucking fat," and "that's what you get for trying to fight with one of us." (*Id.* at 14.) Throughout the incident he was tazed and sprayed with mace. He passed out and urinated on himself. Lt. Ashcraft was present and did nothing to stop the attack. At some point Lopez put smelling salts under Lewis' nose and commanded him to get up, which he could not do as he was on his belly in handcuffs and leg irons. Lopez continued to put smelling salts under Lewis' nose, intentionally burning the inside of his nostrils. The officers apparently took these actions in retaliation for Lewis' involvement in an earlier verbal or physical altercation with another inmate.

Officers pulled Lewis' pants up before medical staff arrived. He was placed face down on a gurney and transported to the infirmary. A doctor remarked sarcastically, "I see you went easy on him." (*Id.* at 6.) Medical staff did an EKG and placed him in a cell in the infirmary. He was not given the opportunity to shower, had to sleep in soiled clothing, and was not provided with his wheelchair. He cried out numerous times during the night that he needed

medical attention; no medical staff or correctional officers responded. The next day, June 15,  he asked an officer for clean clothing and his wheelchair. He was told, "No, that's what you get for fighting." (*Id.* at 7.)[1] Later he was given clean clothing. A nurse evaluated him, contacted Dr. Benson, and Lewis was transported by ambulance to Carson Tahoe Medical Center where he was treated for five days. The delay in treatment has worsened his heart condition. While at the hospital the Inspector General ("IG") sent a representative to interview him about the incident. Officers Rodriguez and Barrios were present for the interview.

He returned to NNCC; when he received his property, he found that his television screen had been smashed, pictures of his deceased mother were torn up, pictures of his son were missing, and other small items were missing. He received a disciplinary write-up, apparently for not complying with the officers commands. At his disciplinary proceedings he was not permitted to call witnesses, even though there were at least 12 inmates and two other officers who had witnessed the incident. He was placed in disciplinary segregation for 61 days. Prior to this incident he had never had a single disciplinary write-up in over eight years of incarceration. Based on these allegations, Lewis asserts claims against the Defendants for failure to protect him, deliberate indifference to his serious medical needs, and retaliation.[2]

**A. Eighth Amendment and Excessive Force**

When a prison official stands accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth

---

[1] Lewis relates that before this incident another inmate had been watching him as he used the toilet. He told the other inmate to move on and stop watching him. He reported the inmate to Officer Beaver. (*Id.* at 6-7.) While not entirely clear, it appears that those events may have led to Lewis being accused of fighting, which may be the reason officers approached him in the dormitory.

[2] Lewis attaches affidavits by five inmates in support of his allegations. (ECF No. 1-1 at 17-21.)

Amendment, the question turns on whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). In determining whether the use of force was wanton and unnecessary, it may also be proper to consider factors such as the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7. Although an inmate need not have suffered serious injury to bring an excessive force claim against a prison official, the Eighth Amendment's prohibition on cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force. *Id.* at 9-10.

Lewis alleges that officers Ralston and Haaus violently removed him from the dormitory, even though he offered no resistance. He alleges that he told them he need his wheelchair in order to comply with their commands, but they tazed him, sprayed him with mace, placed him in handcuffs and leg irons and dragged him out. Officer Lopez participated, including that he repeatedly put smelling salts under Lewis' nose, burning the inside of his nostrils. Lewis characterizes Claim 1 as a claim that these officers failed to protect him in violation of his Eighth Amendment rights, but the Court construes the claim against these officers in Claim 1 as a colorable claim for excessive force, so his Eighth Amendment excessive force claim in Claim 1 will proceed against Defendants Ralston, Haaus, and Lopez.

**B. Eighth Amendment: Deliberate Indifference to Serious Risks to Inmate Safety**

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *Farmer*

*v. Brennan*, 511 U.S. 825, 832 (1994). The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment imposes duties on prison officials to take reasonable measures to guarantee the safety of inmates and to ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer*, 511 U.S. at 832.

To challenge conditions of confinement under the Eighth Amendment, a plaintiff must meet both an objective and subjective test. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). The objective prong requires a "showing that the deprivation was 'sufficiently serious' to form the basis for an Eighth Amendment violation." *Id.*; *see Williams v. Wood*, 223 F. App'x 670, 671 (9th Cir. 2007) (unpublished) (holding that an inmate's "speculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious harm to his future health").

With respect to the subjective prong of the Eighth Amendment analysis, a prisoner must establish that prison officials were deliberately indifferent to serious threats to the inmate's safety. *Farmer*, 511 U.S. at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id.* at 837. Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed. *Id.* at 843.

Additionally, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844;

1    *see also Hallinan v. Scarantino*, 466 F. Supp. 3d 587, 606 (E.D.N.C. 2020) (finding
2    that the "fact that respondents' response may prove inadequate to prevent the
3    spread of COVID-19 does not establish they were deliberately indifferent").

4         Lewis alleges that Lt. Ashcraft was present when other officers violently
5    restrained and dragged him from the dormitory and did nothing to intervene. The
6    Court finds that Lewis has made sufficient allegations to establish the subjective
7    prong of the Eighth Amendment claim because he alleges Ashcraft witnessed the
8    excessive force. With respect to the objective prong, Lewis sufficiently alleges that,
9    as a result, he suffered injuries that necessitated a five-day hospital stay and that
10   worsened his heart problems. The Eighth Amendment claim in Claim 1 that
11   Ashcraft was deliberately indifferent to a serious threat to Lewis' safety may
12   proceed past screening.

13        **C. Eighth Amendment: Delay or Denial of Medical Treatment**

14        The Eighth Amendment prohibits the imposition of cruel and unusual
15   punishment and "embodies 'broad and idealistic concepts of dignity, civilized
16   standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102
17   (1976). A prison official violates the Eighth Amendment when he acts with
18   "deliberate indifference" to the serious medical needs of an inmate. *Farmer v.*
19   *Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment
20   violation, a plaintiff must satisfy both an objective standard—that the
21   deprivation was serious enough to constitute cruel and unusual punishment—
22   and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d
23   978, 985 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744
24   F.3d 176, 1082–83 (9th Cir. 2014).

25        To establish the objective prong, "the plaintiff must show a serious
26   medical need by demonstrating that failure to treat a prisoner's condition could
27   result in further significant injury or the unnecessary and wanton infliction of
28   pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations

omitted). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).

To satisfy the subjective deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096. "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotations omitted). A prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

Lewis alleges in Claim 2 that NNCC medical staff denied him emergency care, causing pain and suffering and worsening his heart condition. But Lewis never identifies any specific medical staff members. The Court therefore dismisses Claim 2 without prejudice and with leave to amend. If Lewis seeks to bring a claim that medical staff acted with deliberate indifference to his serious medical needs, he must identify each person by name and state specifically what actions each person took or failed to take.

In Claim 3, Lewis alleges that he was deprived of medical treatment in violation of his Fourteenth Amendment due process rights. But, as set forth above, a claim that Defendants acted with deliberate indifference to his serious

medical needs falls under the Eighth Amendment. The Fourteenth Amendment

claim in Claim 3 is dismissed with prejudice as amendment would be futile.

### D. First Amendment and Retaliation

Prisoners have a First Amendment right to file prison grievances and to

pursue civil rights litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559,

567 (9th Cir. 2005). "Without those bedrock constitutional guarantees, inmates

would be left with no viable mechanism to remedy prison injustices. And

because purely retaliatory actions taken against a prisoner for having exercised

those rights necessarily undermine those protections, such actions violate the

Constitution quite apart from any underlying misconduct they are designed to

shield." *Id.*

To state a viable First Amendment retaliation claim in the prison context,

a plaintiff must allege: "(1) . . . that a state actor took some adverse action

against [the] inmate (2) because of (3) that prisoner's protected conduct, and

that such action (4) chilled the inmate's exercise of his First Amendment rights,

and (5) the action did not reasonably advance a legitimate correctional goal." *Id.*

at 567-68. Total chilling is not required; it is enough if an official's acts would

chill or silence a person of ordinary firmness from future First Amendment

activities. *Id.* at 568-69.

Specifically, prisoners have a First Amendment right under the Petition

Clause to file prison grievances. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir.

2005). The Petition Clause "is cut from the same cloth as other guarantees of

that Amendment and is an assurance of a particular freedom of expression."

*McDonald v. Smith*, 472 U.S. 479, 482 (1985). "The right to petition allows

citizens to express their ideas, hopes, and concerns to their government ... [it] is

generally concerned with expression directed to the government seeking the

redress of a grievance." *Borough of Dureya, Pa. v. Guarnieri*, 564 U.S. 379, 388

(2011). The right renders liable retaliatory acts that chill or deter inmates from

1    enjoying this form of expression. *See, e.g., Wood v. Beauclair*, 692 F.3d 1041,

2    1051 (9th Cir. 2012) (discussing First Amendment protection from retaliation

3    for filing prison grievances); *Brodheim*, 584 F.3d at 1269. The right to petition,

4    however, imposes no requirement upon prison officials to respond to complaints

5    in a particular way, whether substantively or procedurally. *See Smith v. Ark.*

6    *State Highway Emps., Local 1315*, 441 U.S. 463, 465 (1979) ("the First

7    Amendment does not impose any affirmative obligation on the government to

8    listen …").

9        In *Watison v. Carter*, 668 F.3d 1108 (9th Cir. 2012), the Ninth Circuit

10    concluded that even if the plaintiff fails to allege a chilling effect, he can still

11    survive dismissal if he alleges he suffered "some other harm that is more than

12    minimal." *Id.* at 1114. (internal quotations omitted). More than minimum harms

13    include the filing of a false disciplinary charge against a prisoner, placing him in

14    administrative segregation, or interfering with his parole hearing. *Id.* at 1115.

15        In Claim 4 Lewis alleges that officers violated his First Amendment right

16    to be free from retaliation when they dragged him out of the dormitory while

17    taunting him by saying, "that's what you get for trying to fight with one of us."

18    He appears to allege that officers used excessive force in retaliation either for

19    Lewis's involvement in an altercation with another inmate, or for Lewis allegedly

20    failing to comply with officers commands. But Lewis has not alleged that officers

21    took adverse action against him for conduct protected by the First Amendment.

22    Claim 4 is, therefore, dismissed.

23        It appears from the allegations in the Complaint that Lewis may be also

24    trying to assert a claim that officers retaliated against him by damaging and

25    destroying his property because Lewis spoke to the IG representative about the

26    incident while he was in the hospital in the presence of two NNCC correctional

27    officers. To the extent that Lewis seeks to bring such a claim, Claim 4 is

28    dismissed without prejudice and with leave to amend. Lewis would need to state

specifically what correctional personnel took what adverse action against him for his protected conduct of speaking with the IG representative, which is a form of using the prison grievance process.

### E. Fourteenth Amendment Due Process in Disciplinary Hearings

To state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. *Sandin v. Conner*, 515 U.S. 472, 487 (1995). In *Sandin*, the Supreme Court held that a prisoner has a liberty interest when confinement "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. In *Sandin*, the Supreme Court focused on three factors in determining that the plaintiff possessed no liberty interest in avoiding disciplinary segregation: (1) disciplinary segregation was essentially the same as discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment;" and (3) the length of the plaintiff's sentence was not affected. *Id.* at 486-87.

When a protected liberty interest exists and a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. *See Wolff v. McDonnell*, 418 U.S. 539, 563-70 (1974).

When prison officials limit an inmate's efforts to defend himself, they must have a legitimate penological reason." *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992). An inmate's right to present witnesses may legitimately be limited by "the penological need to provide swift discipline in individual cases . .

1    . [or] by the very real dangers in prison life which may result from violence or

2    intimidation directed at either other inmates or staff." *Ponte v. Real*, 471 U.S.

3    491, 495 (1985).  Prison officials "must make the decision whether to allow

4    witnesses on a case-by-case basis, examining the potential hazards that may

5    result from calling a particular person." *Serrano v. Francis*, 345 F.3d 1071,

6    1079 (9th Cir. 2003).  Despite this, an inmate has no right to cross-examine or

7    confront witnesses in prison disciplinary hearings. *See Wolff*, 418 U.S. at 567-

8    68.

9    [T]he requirements of due process are satisfied if some evidence supports

10   the decision by the prison disciplinary board." *Superintendent, Massachusetts*

11   *Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). However, this standard

12   does not apply when a prisoner alleges that a prison guard's report is false and

13   retaliatory. *Hines v. Gomez*, 108 F.3d 265, 268 (9th Cir. 1997).

14   Inmates have "a constitutional right under the Due Process Clause of the

15   Fourteenth Amendment to be permitted to examine documentary evidence for

16   use in the prison disciplinary hearing." *Melnik v. Dzurenda*, 14 F.4th 981, 984

17   (9th Cir. 2021). "If a prisoner must be allowed to present evidence in his

18   defense, it necessarily follows that he must have some right to prepare for that

19   presentation. With no access to the evidence that will be presented against him,

20   a prisoner could neither build a defense nor develop arguments and evidence to

21   contest the allegations at the disciplinary hearing." *Id.* at 985. "[A] prisoner's

22   right to present a defense must extend to the preparation of a defense,

23   including compiling evidence." *Id.* at 986.

24   Lewis includes allegations in his Complaint that unspecified prison

25   personnel refused to allow him to call witnesses for his disciplinary hearing. If

26   Lewis seeks to include a claim that his disciplinary proceedings violated his

27   Fourteenth Amendment due process rights, he should file an amended

28   complaint in which he sets forth a claim that identifies specific individuals and

13

1  states specifically what actions they took or failed to take that implicated his

2  due process rights with respect to his disciplinary proceedings.

3  **F. Defendants Subject to Dismissal**

4  While Lewis lists the State of Nevada in the Complaint's caption, he does

5  not include the State in his more detailed list of defendants, nor does he include

6  any allegations against the State. (*See* ECF No. 1-1 at 1, 3.) In any event, the

7  Court dismisses the State of Nevada with prejudice, as any claims against the

8  State would be futile. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65

9  (1989) (holding that states are not persons for purposes of § 1983).

10  Defendant Nevada Attorney General Aaron Ford is dismissed without

11  prejudice because Lewis sets forth no allegations against him. Similarly,

12  Defendants NDOC Director of Prisons, NNCC Warden, and corrections officer

13  Bever are dismissed without prejudice because Lewis does not set forth any

14  allegations against them. Lewis also lists Defendants Collen, Omler, White,

15  Jacobs, Garcia, Gaylene, Christy, Venessa, Marcia, and Mac in the caption

16  only, but sets forth no allegations against any of them in the Complaint. So they

17  are all also dismissed without prejudice.

18  **G. Leave to Amend**

19  Although the Court grants Lewis leave to amend his claims, it does not

20  grant Lewis leave to amend in any way that he sees fit. Lewis has leave to

21  amend to allege additional true facts to show that specifically identified

22  Defendants acted with deliberate indifference to his serious medical needs, that

23  specifically identified Defendants retaliated against him for reporting officers'

24  use of excessive force, and that specifically identified Defendants violated his

25  due process rights during his disciplinary proceedings. The Court does not give

26  Lewis leave to assert new claims.

27  If Lewis chooses to file an amended complaint, he is advised that an

28  amended complaint replaces the complaint, so the amended complaint must be

complete in itself. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir.1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal). This means that the amended complaint must contain all facts and claims and identify all defendants that he intends to sue. The Court emphasizes that he must file the amended complaint on this Court's approved prisoner-civil-rights form, and it must be entitled "First Amended Complaint." Lewis must follow the instructions on the form. He need not and should not allege very many facts in the "nature of the case" section of the form. Rather, in each claim, he should allege facts sufficient to show what each defendant did to violate his civil rights. He must file the amended complaint within 30 days of the date of this order. If Lewis files a first amended complaint that does not state colorable claims that identified NNCC Defendants acted with deliberate indifference to his serious medical needs, that specifically identified NNCC Defendants retaliated against him for reporting officers' use of excessive force, and that specifically identified NNCC Defendants violated his due process rights during his disciplinary proceedings, the Court will dismiss those claims with prejudice and without leave to amend. If Lewis chooses not to file a first amended complaint curing the stated deficiencies, his Complaint will proceed on Claim 1.

III.    **CONCLUSION**

It is therefore ordered that a decision on the application to proceed *in forma pauperis* (ECF No. 4) is deferred.

It is further ordered that the Clerk of Court file the Complaint (ECF No. 1-1).

15

1    It is further ordered that Plaintiff's claim that officers used excessive force

2  against him in violation of his Eighth Amendment rights will proceed against

3  Defendants Ralston, Haaus, and Lopez (Claim 1).

4    It is further ordered that Plaintiff's claim against Defendant Lt. Ashcraft

5  that he acted with deliberate indifference to a serious risk to Lewis' safety in

6  violation of his Eighth Amendment rights will proceed (Claim 1).

7    It is further ordered that Claim 2 is dismissed without prejudice and with

8  leave to amend as set forth in this order.

9    It is further ordered that Claim 4 is dismissed without prejudice and with

10 leave to amend as set forth in this order.

11    It is further ordered that Claim 3 is dismissed with prejudice and without

12 leave to amend as set forth in this order.

13    It is further ordered that Defendant the State of Nevada is dismissed from

14 this action with prejudice as amendment would be futile.

15    It is further ordered that Defendants Nevada Attorney General Aaron

16 Ford, NNCC Warden, corrections officers Bever, Collen, Omler, White, Jacobs,

17 and Garcia, and Gaylene, Christy, Venessa, Marcia, and Mac are all dismissed

18 without prejudice and with leave to amend.

19    It is further ordered that if Plaintiff chooses to file a first amended

20 complaint curing the deficiencies of his Eighth Amendment medical claim

21 (Claim 2) and First Amendment retaliation and Fourteenth Amendment due

22 process claims (Claim 4) as outlined in this order, he must file the first

23 amended complaint within 30 days from the date of entry of this order.

24    It is further ordered that the Clerk send to Plaintiff the approved form for

25 filing a § 1983 complaint, instructions for the same, and a copy of his

26 Complaint. If Plaintiff chooses to file a first amended complaint, he should use

27 the approved form and he will write the words "First Amended" above the words

28 "Civil Rights Complaint" in the caption.

1    It is further ordered that if Plaintiff chooses not to file a first amended

2  complaint this case will immediately proceed on Claim 1 only.

3

4    Dated this 1st day of August 2024.

5

6

7  _____

8  ANNE R. TRAUM
   UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28